IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL ACTION |
| : | |
| v. : | NO. 3:19-79 |
| : | |
| IVAN JAMES, KAI JAMES, JOH : | |
| WILLIAMS, MALACHI BENJAMIN, : | |
| JAHKIEBO JOSEPH, ARIEL : | |
| PETERSEN : | |

## MEMORANDUM with post-hearing findings

**KEARNEY, J.**  **January 22, 2024**

Our Grand Jury charged Ariel Petersen, Ivan James, and Joh Williams with conspiracy to distribute drugs and firearms offenses among other offenses.[1] Defendant Petersen, joined by Defendants Ivan James and Williams, moves to suppress evidence obtained from a Federal Title III wiretap.[2] They claim earlier Territorial wiretaps obtaining inadmissible evidence in this Court served as the source of information for the United States to later swear the level of probable cause necessary to secure the Federal wiretap which now requires we suppress evidence gathered under the Federal wiretap. The United States counters with independent grounds supporting probable cause for the Federal wiretap and neither the Federal wiretap nor evidence flowing from it should be suppressed.[3] We granted Defendants' request for an evidentiary hearing. We held an extensive evidentiary pretrial hearing evaluating the credibility of the United States' witnesses. We denied the Motion to suppress before opening statements.[4]

### I.    Adduced evidence

The United States adduced credible evidence confirming the independent source of the Federal wiretap. The United States presented experienced law enforcement professionals as witnesses: Virgin Islands Bureau of Corrections Officer Samuel, Drug Enforcement

Administration Agent Gardner, and Virgin Islands Police Department Officer Santos. The United States also introduced documents pertaining to the Federal wiretap application.

Officer Samuel swore he performed a random search of Defendant Williams's prison cell at the Golden Grove Correctional Facility, now the John A. Bell Correctional Facility, on St. Croix in 2013. During the search, Officer Samuel located and seized a contraband cell phone and papers. Upon discovering the phone's passcode on the papers, Officer Samuel unlocked the phone and viewed a video depicting Defendant Williams engaged in sexual acts with a female corrections officer whom Officer Samuel recognized and multiple text messages indicative to Officer Samuel of drug distribution activity by Defendant Williams occurring inside the correctional facility.

Officer Samuel swore after he seized Defendant Williams's cell phone, Defendant Williams retaliated by placing a "hit" on him to have him killed. Another inmate informed Officer Samuel of Defendant Williams's intents to hire a hitman and showed Officer Samuel a map to Officer Samuel's house. Officer Samuel informed the warden. The local government moved he and his family off island for protection.

Agent Gardner swore local authorities notified her of Defendant Williams's suspected drug distribution activity and murder-for-hire plot. By this time another Bureau of Corrections officer, Officer Liburd, had also been threatened by Defendant Williams and moved off island for protection. Local authorities also advised Agent Gardner of incarcerated person Hector Ledesma's report Defendant Williams wanted to hire a hitman from Atlanta and fellow incarcerated person Johnny Martinez would inform the hitman who Officer Samuel was and where he lived.

Agent Gardner then applied for a Federal Title III wiretap under 18 U.S.C. § 2518. Agent Gardner swore the discovery of Defendant Williams's contraband cell phone started the investigation leading to the wiretap application. She focused the wiretap application on Defendant Williams's murder-for-hire plot.[5] Evidence of Defendant Williams's drug distribution activity within the correctional facility found in his cell phone text messages also supported her sworn statements to obtain the wiretap. Agent Gardner was previously involved in the four Territorial wiretaps of Defendant Williams in 2011 and 2012. The Territorial wires are noted in Agent Gardner's affidavit because earlier wiretaps involving the same subject must be disclosed. Agent Gardner swore "the previous wiretaps offered no information to assist with the current murder-for-hire plot..."[6] The Territorial wires investigated drug trafficking activity by Defendant Williams on behalf of Defendant Ivan James. Agent Gardner did not focus on Defendant Ivan James as part of the Federal wire application; she did not list Defendant Ivan James as a suspect in the wiretap affidavit. The murder-for-hire plot only become known to law enforcement after authorizations for the four Territorial wires expired. Agent Gardner reference continued drug trafficking activity found on Defendant Williams's phone but the murder for hire remained her primary focus for the Federal wiretap application.

Virgin Islands Police Officer Santos swore he set up the wire system for the Federal Title III wiretap. Like Agent Gardner, he had also been involved in the prior Territorial wiretaps but viewed the Federal wiretap as entirely separate as based on the newly discovered murder-for-hire plot. Officer Santos agreed he had background knowledge of Defendants Williams and Ivan James based on his involvement in the Territorial wires and had served as the affiant for the Territorial wiretap applications. Officer Santos swore no prosecutions resulted from the Territorial wiretaps and all had expired before applying for the Federal wiretap. Officer Santos

3

swore the Territorial wiretaps search did not lead to the separate search of Defendant Williams's cell and seizure of the contraband cell phone.

## II. Analysis

Defendants requested a "*Kastigar*-style" hearing and urge us to apply a *Kastigar*-type standard. [7] We granted their request for a hearing. We decline to suppress evidence. The Supreme Court's teachings in *Kastigar* apply to challenges concerning the independent source of evidence in the context of a defendant's earlier immunized testimony. The Supreme Court in *Kastigar* teaches the prosecution must prove by clear and convincing evidence the source of the trial evidence is not the immunized testimony. The parties agree we are not addressing earlier immunized testimony in this case. Defendants' repeated reliance on *Kastigar* is inapplicable.

But we adjusted our analysis after the Defendants' recognition of the appropriate standard for their challenge. Traditional standards for suppression of evidence under the Fourth Amendment, particularly suppression of evidence as fruit of the poisonous tree, apply here.[8] Defendants have the initial burden to "go forward with specific evidence demonstrating taint" when seeking to suppress evidence as derived from earlier illegal government activity.[9] The burden of persuasion then shifts to the United States to show the evidence is untainted.[10]

One way for the United States to carry their burden is to demonstrate the independent source leading to collection of the allegedly tainted evidence.[11] An earlier investigation by law enforcement, even if later found illegal, does not provide lifelong protection from later searches.[12] Law enforcement officers familiar with an individual need not clear their memory of illegally obtained knowledge to avoid suppression of later knowledge or evidence legally acquired.[13]

### III. Findings

Credible witness testimony and documentary evidence adduced during our evidentiary hearing compel our findings:

1. The United States' agreement to suppress four Territorial wiretaps involving Defendant Williams coupled with the United States' agreement to demonstrate the independence of the Federal wiretap constitute prima facie evidence demonstrating taint requiring the United States meet his burden to show the Federal wiretap is not tainted;

2. The random search of Defendant Williams's prison cell and discovery of the contraband cell phone, the evidence of drug activity on the cell phone, and Defendant Williams's independent decision to pursue a murder-for-hire plot against two corrections officers provided probable cause to support the Tile III Federal wiretap;

3. Officer Santos and Agent Gardner's earlier involvement with Defendant Williams during the Territorial wiretaps did not cause them to seek the Federal wiretap nor taint the evidence collected;

4. A law enforcement officer, if presented with the facts about Defendant Williams's cell phone and murder-for-hire plot, would have sought a wiretap warrant regardless of what the officer previously knew or did not know about Defendant Williams;

5. The United States carried its burden of showing the Federal wiretap and evidence flowing from the Federal wiretap result from distinct and independent grounds from the Territorial wiretaps; and,

6. We will not suppress the evidence flowing from the Federal wiretap as the agents supported their application for wiretap with independent probable cause and nothing in their

demonstrated probable cause arising from a later murder-for-hire investigation connects to the earlier Territorial wiretaps.

---

[1] ECF No. 555.

[2] ECF No. 844. Defendant Petersen first moved to suppress on December 9, 2022 asking, among other things, we suppress four Virgin Islands Territorial wiretaps on various grounds and other evidence as illegally derived from the Territorial wiretaps.[2] Judge Smith read into the record an agreement reached by the parties on the wiretap issue at the April 4, 2023 motions hearing. The United States agreed not to use the Territorial wiretaps as evidence, except to the extent otherwise suppressed evidence is admissible at trial, and to establish the independent source of probable cause for its other evidence, particularly of a 2013 Federal Title III wiretap. ECF No. 509 at 10:9-17.

[3] ECF No. 864. In its response to the renewed Motion the United States challenges Defendant Petersen's standing to assert a Fourth Amendment violation, though it does not appear to ultimately rely on a standing argument. ECF No. 864. While standing issues may be present, we find the United States waived standing issues in concluding its agreement with Defendants during the April 4, 2023 hearing.

[4] ECF No. 925.

[5] 2013 Federal Wiretap Affidavit of Agent Gardner ("Affidavit"), United States Exhibit 2.1-024 through 025. The affidavit recites the following suspected offenses as supporting the application:

  a. Use of Interstate Commerce Facilities in the Commission of a Murder-for-Hire under Title 18 U.S.C. 1958;
  b. Possession with Intent to Distribute and Distribution of Controlled Substances, namely marijuana and cocaine, in violation of 21 U.S.C. § 841(a)(1);
  c. Conspiracy to Possess with Intent to Distribute Controlled Substances, namely marijuana and cocaine, in violation of 21 U.S.C. § 846 and 963;
  d. Use of a Communication Facility to Facilitate the above listed offenses, in violation of 21 U.S.C. § 843(b); and
  e. Aiding and Abetting, in violation of 18 U.S.C. § 2[.]

[6] Affidavit at 35, United States Exhibit 2.1-053.

[7] *Kastigar v. United States*, 406 U.S. 441 (1972).

[8] *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (defining the relevant inquiry as "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint"); *United States v. Fredericks*, 684 F. App'x 149, 157 (3d Cir. 2017) (applying *Wong Sun*).

---

[9] *Alderman v. United States*, 394 U.S. 165, 183 (1969).

[10] *Id.*

[11] *Wong Sun*, 371 U.S. at 487 (quoting *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920)); *see also Murray v. United States*, 487 U.S. 533 (1988) (where evidence obtained in otherwise valid search warrant was earlier seen by police in the premises during illegal warrantless entry, police so acting have the "burden of convincing a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it"); *United States v. Perez*, 280 F.3d 318, 338 (3d Cir. 2002) (applying the independent source doctrine and citing *Silverthorne* and *Wong Sun*).

[12] *See United States v. Butts*, 704 F.2d 701, 703 (3d Cir. 1983) ("Second, we must ask whether, assuming the authorities lacked probable cause, the [later collected evidence] should have been excluded as the fruit of a poisonous tree, or whether some intervening event had purged the taint of the improper arrest thereby rendering the [later collected evidence] admissible."); *United States v. Friedland*, 441 F.2d 855 (2d Cir.1971).

[13] *See Gissendanner v. Wainwright*, 482 F.2d 1293, 1296 (5th Cir. 1973) ("The suggestion that the policeman's mind must be the tabula rasa is a fanciful one at best.").